NOT DESIGNATED FOR PUBLICATION

No. 123,069

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAIME A. GRANADOS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed September 10, 2021. Probation revocation reversed, sentence vacated, and case remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., CLINE, J., and WALKER, S.J.

PER CURIAM: Jaime A. Granados appeals the district court's revocation of his probation and imposition of his underlying 32-month prison sentence. Granados contends that the district court erred by revoking his probation because it did not make the necessary findings to bypass the imposition of the otherwise mandatory intermediate sanctions for his probation violation. In the end, because the record on appeal supports Granados' contention that the district court failed to make the required particularized findings to immediately revoke Granados' probation, we reverse the revocation of Granados' probation and remand to the district court for a new disposition hearing.

1

On August 4, 2017, in Sedgwick County criminal case No. 17CR2336, the State charged Granados with possessing methamphetamine, a severity level 5 nonperson felony. At the time these charges were filed, Granados was serving an 18-month probation term for his possession of methamphetamine conviction in an earlier Sedgwick County criminal case, No. 17CR478.

Eventually, Granados entered into a plea agreement with the State in 17CR2336. Under this plea agreement, Granados agreed to plead guilty to possessing methamphetamine in 17CR2336 in exchange for the State's promise to do the following: (1) to recommend that the district court allow him to remain on probation in 17CR478; and (2) to recommend that the district court sentence him to probation on a consecutive prison sentence in 17CR2336.

On September 7, 2017, Granados pled guilty to possessing methamphetamine in case 17CR2336 in accordance with the plea agreement. But before his scheduled sentencing hearing, Granados allegedly left the residential center where he was residing. As a result, the State charged Granados with aggravated escape from custody, a severity level 8 nonperson felony, in Sedgwick County criminal case No. 17CR3384.

It is unclear from the record on appeal when law enforcement ultimately arrested Granados on the escape charge. But on April 2, 2018, Granados pled guilty to aggravated escape from custody as part of a plea agreement with the State in 17CR3384. Under this plea agreement, in exchange for Granados' aggravated escape from custody guilty plea, the State agreed to recommend that the district court durationally depart to impose a 10-month prison sentence upon Granados that would run consecutively to any sentence the district court imposed upon Granados at his sentencing in 17CR2336 and at his probation

violation hearing in 17CR478, assuming the district court revoked Granados' probation in that case.

On May 17, 2018, the district court held a combined hearing on Granados' pending probation violations in 17CR478, sentencing for methamphetamine possession in 17CR2336, and sentencing for escape in 17CR3384. At the outset of the hearing, Granados stipulated to violating his probation in 17CR468 as alleged in the State's motion to revoke probation. The district court then revoked Granados' probation in 17CR478, ordering Granados to serve his underlying 23-month prison sentence for his original methamphetamine possession conviction.

Next, the district court granted Granados' motion to durationally depart in 17CR3384, ordering him to serve a term of 10 months' imprisonment for his aggravated escape from custody conviction, consecutive to the methamphetamine possession sentence in case 17CR478.

Finally, for his possession of methamphetamine conviction in 17CR2336, the district court granted Granados 18 months' probation in community corrections from a 32-month prison sentence, which was consecutive to his other two convictions.

In summary, in cases 17CR478 and 17CR3384 the district court ordered Granados to serve a combined controlling term of 33 months in prison, to be followed by 18 months' supervised probation in case 17CR2336 after Granados' release from prison. Granados was then remanded to prison to serve the 33 months. Although the record indicates the district court may have inadvertently misidentified the correct case numbers when imposing Granados' new sentences in cases 17CR2336 and 17CR3384, all parties agree, and the sentencing journal entries reflect, that the above summary accurately reflects the outcome of the May 17, 2018 hearing.

After Granados completed his prison sentences in 17CR478 and 17CR3384 in late August 2019, he reported to his assigned community corrections intensive supervision officer (ISO) to begin his 18-month probation term in 17CR2336. Although Granados initially reported to his ISO, he missed a scheduled meeting on September 3, 2019. Then, on September 5, 2019, Granados missed a 4 p.m. meeting with his ISO, despite having called that morning to reschedule this meeting from 9 a.m. to 4 p.m. After this, Granados stopped reporting to his ISO altogether. Additionally, the post office returned a letter from the ISO to Granados notifying him of a mandatory meeting on September 18, 2019, citing an "insufficient address" as the reason for its inability to deliver the letter.

In response, upon the State's request, the district court issued a warrant for the arrest of Granados. This warrant stated that Granados violated his probation by failing to report to his ISO as directed on September 5, 2019, and September 18, 2019, by not attending his meetings with his ISO on those dates. About four months later, on January 27, 2020, law enforcement arrested Granados on the warrant.

Following his arrest, the district court scheduled Granados' probation violation hearing in case 17CR2336 for February 7, 2020. But the day before this scheduled hearing, Granados bonded out of jail. He then failed to appear at his February 7, 2020 probation violation hearing. As a result, the district court issued an alias warrant for Granados' arrest. A little over a month later, on March 10, 2020, Granados' bondsman located and returned Granados to the Sedgwick County Jail.

Ultimately, Granados' 17CR2336 probation violation hearing occurred on June 16, 2020. At this hearing, the State relied on the ISO's testimony about Granados failing to attend his September 2019 meetings to support its request to revoke Granados' probation in 17CR2336. The State then contended that the district court should revoke Granados' probation because he had absconded, was a threat to public safety, and was a threat to his own welfare.

Granados opposed the State's motion, arguing that the State failed to establish that he had violated his probation conditions by not attending his September 2019 meetings with his ISO. Moreover, he argued that even assuming that he did violate his probation conditions by not attending his September 2019 meetings with his ISO, the district court should allow him to remain on probation because his drug addiction could be better addressed on probation as opposed to in prison.

The district court rejected Granados' arguments. In doing so, it first found that although the State failed to establish that Granados violated his probation conditions by not reporting as directed to the September 19, 2019 meeting with his ISO, the State had established that Granados violated his probation conditions by not reporting as directed to the September 5, 2019 meeting with his ISO. In making this finding, the district court relied on Granados' phone conversation with his ISO about rescheduling his meeting from 9 a.m. to 4 p.m. on September 5, 2019. Based on this phone conversation, the district court concluded that Granados knew about his September 5, 2019 meeting but failed to report as directed.

At the conclusion of the hearing, the district court revoked Granados' probation in 17CR2336, finding that the immediate revocation of Granados' probation was warranted for three reasons:  (1) because Granados had absconded on probation, (2) because Granados posed a threat to the public's safety, and (3) because Granados posed a threat to his own welfare. The district court therefore ordered Granados to serve his underlying 32-month prison sentence.

Granados has timely appealed the revocation of his probation and imposition of his underlying 32-month prison sentence in 17CR2336.

ANALYSIS

On appeal, Granados argues that the district court erred when it revoked his probation in 17CR2336 without first imposing intermediate sanctions upon him because the district court's findings to permit bypassing those sanctions were inadequate. In making this argument, he first contends that the district court's finding that he absconded while on probation was error because "missing a single appointment, as a matter of law, does not amount to absconding." Next, Granados contends that the district court's findings that he posed a threat to the public's safety and his own welfare were statutorily inadequate because the district court failed to find these findings with particularity. As a result, Granados asks us to reverse the revocation of his probation and imposition of his underlying 32-month prison sentence in 17CR2336.

In response, the State contends that Granados' argument about the district court's absconder finding is irrelevant because "[t]he district court did not make absconder findings to bypass intermediate sanctions." It further argues that the district court made the necessary particularized findings to immediately revoke Granados' probation in 17CR2336 based on the threat he posed to the public's safety and his own welfare. Accordingly, the State asks this court to affirm the district court's revocation of Granados' probation in 17CR2336.

As we will explain, we believe Granados' arguments about the inadequacy of the district court's findings supporting the immediate revocation of his probation are persuasive. Consequently, we are compelled to reverse the district court's revocation of Granados' probation and imposition of Granados' underlying 32-month prison sentence in 17CR2336 and remand to the district court for a new disposition hearing.

In a contested probation violation hearing, the State most prove each of an offender's alleged probation violations by a preponderance of the evidence. *State v.*

*Dunham*, 58 Kan. App. 2d 519, 528, 472 P.3d 604 (2020). On appeal, our task is to review an offender's challenge concerning the revocation of his or her probation to determine if the district court has abused its discretion. *State v. Coleman*, 311 Kan. 332, 334, 460 P.3d 828 (2020). A district court abuses its discretion when its revocation of an offender's probation was based on an error of law, an error of fact, or an otherwise unreasonable basis. *State v. Dominguez*, 58 Kan. App. 2d 630, 633, 473 P.3d 932 (2020). To the extent Granados' probation revocation challenge requires us to interpret the probation violation statutes, interpretation of a statute is a question of law over which we exercise de novo review. *State v. Caruthers*, 22 Kan. App. 2d 910, 911, 924 P.2d 1278 (1996).

*Absconder findings*

Granados committed the crime of methamphetamine possession at issue in 17CR2336 in June 2017. Because the 2016 version of K.S.A. 22-3716—the statute governing probation violation proceedings—was in effect when Granados committed his underlying crime, the 2016 version of K.S.A. 22-3716 controlled what probation violation sanctions the district court could impose upon Granados for not reporting as directed to his September 5, 2019 meeting with his ISO. See *Coleman*, 311 Kan. at 337 (holding that version of K.S.A. 22-3716 in effect when offender commits his or her underlying crime controls that offender's later probation violation proceedings).

K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(D) states that upon the district court's finding that an offender violated the terms of his or her probation, the district court must impose either a 2-day or 3-day jail sanction and then an additional 120-day or 180-day prison sanction before revoking that offender's probation. However, the district court may bypass the imposition of the two-tier intermediate sanction scheme by invoking one of subsection (c)(8)'s or subsection (c)(9)'s exceptions allowing for the immediate

7

revocation of an offender's probation even if the offender had never previously violated his or her probation.

In this case, it is undisputed that the district court had not imposed a second-tier 120-day or 180-day intermediate sanction upon Granados before his June 16, 2020 probation violation hearing, although the journal entry of probation violation in the record states, apparently incorrectly, that Granados had previously served a 60-day sanction. Consequently, in order to bypass the 120/180-day second-tier intermediate sanction required by the statute, the district court had to invoke one of K.S.A. 2016 Supp. 22-3716(c)(8)'s or (c)(9)'s exceptions allowing for the immediate revocation of Granados' probation and imposition of Granados' underlying 32-month prison sentence.

One of these exceptions, K.S.A. 2016 Supp. 22-3716(c)(8)(B)(i), allows the district court to immediately revoke an offender's probation without first imposing any intermediate sanctions if the offender absconds while on probation. Although the State argues that the district court "clearly did not make a finding that [Granados] was an absconder for the purposes of bypassing [K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(D)'s] intermediate sanctions," we believe the State's contention is plainly incorrect. In explaining its decision for revoking Granados' probation in 17CR2336 at the June 16, 2020 probation violation hearing, the district court referred to Granados as absconding three times. Also, in the journal entry of Granados' probation violation hearing, the district court noted that it was revoking his probation, in part, because he had "[a]bsconded." Hence, we find no merit in the State's argument that the district court did not bypass the imposition of intermediate sanction provisions of K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(D) based on a finding that Granados was an absconder.

Despite the preceding problem with the State's argument, our Supreme Court has held that the district court may invoke K.S.A. 2016 Supp. 22-3716(c)(8)(B)(i)'s absconder exception to bypass the imposition of subsection (c)(1)(A)-(D)'s intermediate

sanctions only (1) when the State proves by a preponderance of the evidence that the offender absconded and (2) when the district court makes a specific finding that the offender absconded. *State v. Dooley*, 308 Kan. 641, Syl. ¶ 3, 423 P.3d 469 (2018) (*Dooley II*). And in order to prove that an offender absconded, "the State must show that the probation violator engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process." 308 Kan. at 657.

In *Dooley II*, the State produced evidence at a probation violation hearing that Dooley had admitted use of various drugs including amphetamine, methamphetamine, opiates, Adderall, and Xanax; had failed to report to a halfway house (Oxford House) in Dodge City; and failed to report to Dodge City Community Corrections. Though the State had charged that failing to report to Oxford House and community corrections constituted absconding, and Dooley in fact stipulated to absconding from supervision, the district court did not explicitly state that it was revoking Dooley's probation for absconding, although the journal entry of the hearing stated that his probation was being revoked in part because he was an absconder. A panel of our court found that this was adequate evidence of absconding and affirmed the district court's decision to revoke on that basis. *State v. Dooley*, No. 111,554, 2016 WL 1545172 (Kan. App. 2016) (unpublished opinion) (*Dooley I*).

After granting a petition for review, our Supreme Court disagreed, and remanded the case to the district court with instructions to either impose intermediate sanctions or to bypass the intermediate sanctions based upon a finding, supported by substantial evidence, that Dooley absconded from supervision. *Dooley II*, 308 Kan. at 658.

At the evidentiary hearing on remand, Dooley testified that, despite admitting that he had absconded at the earlier hearing and had not reported to his community corrections officer as directed, he did not leave Kansas or Dodge City and was not hiding from police or corrections officers. Dooley told the district court he was living in a

9

homeless shelter or truck-stop hotel in Dodge City at the time he was required to report and did not have the full admission fee to enter the halfway house. Dooley testified that he avoided his appointments and did not keep his supervising officer aware of his whereabouts because he was afraid of going to prison. Dooley finally was arrested after he showed up at the community corrections office about one month after he was originally scheduled to report. The district court found that this evidence showed that Dooley had absconded and once again bypassed intermediate sanctions and ordered him to serve his underlying sentence.

When Dooley appealed his probation revocation, a divided panel of our court upheld the district court's finding that Dooley had absconded. *State v. Dooley*, No. 120,863, 2019 WL 6223343 (Kan. App. 2019) (unpublished opinion) (*Dooley III*). Once again our Supreme Court granted review. In a recently announced decision, the Supreme Court affirmed the district court's decision and announced a somewhat more expansive definition of absconding than it had previously embraced: "If a violator's actions demonstrate an intent to evade probation supervision because the probationer hid or secretly left the jurisdiction *or because a pattern of violations permits the inference that the probationer is intentionally evading the legal process*, then the probationer has absconded from supervision." (Emphasis added.) *State v. Dooley*, 313 Kan. 815, Syl. ¶ 2, 491 P.3d 1250 (2021) (*Dooley IV*).

But even after *Dooley IV*, it is clear that a district court may not invoke K.S.A. 2016 Supp. 22-3716(c)(8)(B)(i)'s absconder exception to bypass the imposition of subsection (c)(1)(A)-(D)'s intermediate sanctions simply because an offender failed to report to his or her ISO. Instead, the district court may invoke this exception *only* if there is evidence that the offender willfully avoided detection from the law, or if there is a "pattern of violations" which allows an inference that a violator is evading legal process. See *State v. Huckey*, 51 Kan. App. 2d 451, 458, 348 P.3d 997 (2015) (rejecting State's

contention that Huckey absconded on probation absent evidence that Huckey "had fled or hidden himself or deliberately acted to avoid arrest, prosecution, or service of process").

As applied to our case, for the district court to have validly bypassed K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(D)'s otherwise mandatory intermediate sanctions under subsection (c)(8)(B)(i)'s absconder exception, the State needed to present some evidence at Granados' June 16, 2020 probation violation hearing indicating that he "engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process," see *Dooley II*, 308 Kan. at 657, or engaged in a "pattern of violations" leading to the same conclusion, see *Dooley IV*, 313 Kan. 815, Syl ¶ 2. It is readily apparent to us that the State presented no such evidence at Granados' June 16, 2020 probation violation hearing.

To reiterate, the district court found that Granados violated the conditions of his probation in just one way: He failed to report to the September 5, 2019 meeting with his ISO after changing the meeting time. In his brief, Granados concedes that he technically violated the terms of his probation by missing his appointment with his ISO on that date. Additionally, the record on appeal indicates that Granados' ISO did not know his exact whereabouts from when Granados failed to attend his September 5, 2019 meeting to when law enforcement arrested Granados on the 17CR2336 probation violation warrant on January 27, 2020. Thus, the evidence before the district court supported that Granados did not remain in touch with his ISO for more than four months after failing to report to his September 5, 2019 meeting. Notably, when the court revoked Granados' probation, it was aware of Granados' aggravated escape from custody conviction and failure to appear at his initial 17CR2336 probation violation hearing.

Even so, we conclude that the evidence before the district court did not support that Granados had absconded from his 17CR2336 probation. At the June 16, 2020 probation violation hearing, Granados' ISO never testified that he believed Granados was

11

trying to evade him by not reporting as directed to his September 5, 2019 meeting. To the contrary, he simply testified that he had no contact with Granados following their September 5, 2019 phone call in which Granados told him that he would be at the probation office for a meeting at 4 p.m. Although the fact that Granados indicated that he would be at the probation office for the 4 p.m. meeting suggests that he knowingly missed his probation meeting, this fact, standing alone, does not establish that Granados purposely missed his probation meeting. Much more crucial, in our view, is the testimony of Granados' ISO at the probation violation hearing that Granados remained in compliance with his 17CR478 and 17CR3384 conditions of postrelease supervision following his release from prison. Granados' ISO explained that when he had contact with Granados' parole officer, that officer told him that Granados was attending "his group."

Simply put, because Granados continued to comply with his 17CR478 and 17CR3384 postrelease reporting conditions, the evidence does not support that Granados was intentionally hiding or avoiding legal process as meant under our Supreme Court's most recent definition of "abscond." Instead, Granados' ISO's testimony supports that on September 5, 2019, Granados failed to report as directed to his ISO and then failed to remain in touch with his ISO thereafter. This makes Granados' case quite comparable to the facts in our court's *Huckey* decision—a case where a panel of our court reversed the district court's immediate revocation of Huckey's probation under the absconder exception because Huckey's "fail[ure] to report for more than 4 months," in and of itself, did not "support a finding that [Huckey] had fled or hidden himself or deliberately acted to avoid arrest, prosecution, or service of process." 51 Kan. App. 2d at 458. And we cannot find that missing a single meeting with his ISO, all the while complying with his obligations on postrelease supervision, constitutes the "pattern of violations" as contemplated by *Dooley IV*.

As a result, at Granados' June 16, 2020 probation violation hearing, the State failed to prove by a preponderance of the evidence that Granados absconded while on probation under the criteria of *Dooley IV* and *Huckey*. Hence, insufficient evidence supports the district court's finding that Granados was an absconder. And, in turn, the district court abused its discretion by bypassing K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(D)'s otherwise mandatory intermediate sanctions under subsection (c)(8)(B)(i)'s absconder exception.

*Public safety and offender welfare findings*

As noted above, in addition to its absconder finding, the district court revoked Granados' probation and imposed Granados' underlying 32-month prison sentence in 17CR2336 because it found that Granados' continued probation threatened the public's safety as well as Granados' own welfare.

Under K.S.A. 2016 Supp. 22-3716(c)(9), the district court may immediately revoke an offender's probation without first imposing any intermediate sanctions upon the offender if it "finds and sets forth with particularity the reasons for finding that the safety of members of the public [would] be jeopardized or that the welfare of the offender [would] not be served by such [intermediate sanction]."

Relying on K.S.A. 2016 Supp. 22-3716(c)(9)'s language that the district court must make any public safety or offender welfare findings with particularity, our Supreme Court has determined that to immediately revoke an offender's probation under either subsection (c)(9)'s public safety or offender welfare exceptions, the district court must make specific findings, as opposed to general findings, concerning why the public's safety or the offender's welfare necessitates the immediate revocation of the offender's probation. *Dooley II*, 308 Kan. at 652. This means that "[b]road generalizations about public safety and offender welfare that could easily apply to all similar cases" are insufficient to meet K.S.A. 2016 Supp. 22-3716(c)(9)'s particularized findings

13

requirement. *State v. Duran*, 56 Kan. App. 2d 1268, Syl. ¶ 3, 445 P.3d 761 (2019). Thus, if our analysis means that we "must infer from the [district court's] findings the particularized reasons why public safety would be jeopardized or the offender's welfare would not be served," then the district court's findings do not comply with K.S.A. 2016 Supp. 22-3716(c)(9)'s particularized findings requirement. *Duran*, 56 Kan. App. 2d 1268, Syl. ¶ 2.

Here, Granados argues that the district court's findings to support its decision to immediately revoke his probation based on the threat he posed to the public's safety and his own welfare constituted the exact type of broad generalizations our caselaw prohibits. The State counters that the district court's public safety and offender welfare findings were adequate, explaining:

> "A fair reading of the record indicates that the district court not only expressly found that [Granados] was not amenable to probation and public safety would be jeopardized, it articulated its reasons for such a conclusion—namely, that defendant's behavior in the instant case and his other criminal cases indicated that he was not concerned with utilizing the resources provided to him through probation and instead ran from his responsibilities."

We disagree. We believe a fair reading of the district court's findings to support the immediate revocation of Granados' probation under K.S.A. 2016 Supp. 22-3716(c)(9) supports Granados' position, not the State's position.

Ironically, when it rejected Granados' request to remain on probation, the district court acknowledged the legal standard it was required to follow. The court noted that to revoke Granados' probation without imposing an intermediate sanction under K.S.A. 2016 Supp. 22-3716(c)(9), it needed to find with particularity that Granados posed a threat to the public safety or his own welfare. In fact, it explicitly stated that it was "familiar with the case law that implicit comments" and "[b]road statements about

14

continued drug usage and past behavior" are insufficient to invoke K.S.A. 2016 Supp. 22-3716(c)(9)'s public safety and offender welfare exceptions.

But then the district court went on to explain that it would not impose intermediate sanctions upon Granados because of Granados' criminal history and previous failures to "tak[e] advantage of [resources]." Although not entirely clear, it seems the district court believed that Granados had not taken advantage of earlier opportunities and resources while on probation because he had absconded. In any case, the district court concluded that because of Granados' criminal history and history of running from resources, Granados was taking those resources "from others that need[ed] that help," which resulted in hurting the community and himself.

In our opinion the district court's findings about Granados' prior conduct did not adequately address why Granados posed a current threat to the public safety or his own welfare. Once again, the sole probation violation supporting the district court's revocation of Granados' probation was that he failed to report to his ISO as directed by missing his September 5, 2019 meeting. As we have explained in the preceding section, there was no evidence before the district court that Granados had absconded from his 17CR2336 probation as meant under our Supreme Court's definition of "abscond." Thus, to the extent the district court found that Granados had not taken advantage of earlier opportunities on probation by absconding, insufficient evidence supported this finding. The district court's analysis simply compounded its earlier error.

In addition, the district court's findings were not particularized. By relying on Granados' criminal history and prior failures to take advantage of opportunities and resources on probation to revoke Granados' 17CR2336 probation, the district court, in effect, found that Granados was not amenable to probation. But this amenability finding did not address why Granados *currently* posed a risk to the public safety and his own welfare should he be allowed to remain on probation. To put it differently, the district

15

court's amenability finding relied entirely on conduct Granados engaged in before he committed the failure to report probation violation at issue in this case. In fact, the district court's amenability finding relied entirely on conduct Granados engaged in before he started serving his prison sentences in 17CR478 and 17CR3384.

Likewise, this amenability finding did not *specifically detail* why Granados currently posed a threat to the public safety or his own welfare should he be allowed to remain on probation. Again, in explaining its reasoning for immediately revoking his probation under K.S.A. 2016 Supp. 22-3716(c)(9), the district court relied on Granados' criminal history and history of running from resources; it concluded that this history proved that Granados was taking resources from others in the community that needed those resources, which therefore meant that Granados' continued probation threatened the public's safety and his own welfare.

In making this nonamenability finding, however, the district court made broad generalizations about Granados' amenability to probation that could apply to virtually any offender with past probation violations. Seemingly, the district court's decision to immediately revoke Granados' probation hinged on three assumptions that could apply to numerous offenders in Granados' situation: (1) The assumption that Granados would violate his 17CR2336 probation again should he be allowed to remain on probation based on Granados' criminal history and history of running from resources, (2) the assumption that Granados' continued probation in 17CR2336 would result in Granados wasting public resources, and (3) the assumption that Granados' continued probation in 17CR2336 would result in taking limited public resources from others who needed those public resources.

But even if we ignored the preceding problems with its public safety and offender welfare findings under K.S.A. 2016 Supp. 22-3716(c)(9), the district court's emphasis on the resources that Granados would have allegedly wasted had he remained on probation

16

still did not support its immediate revocation of Granados' probation. Once more, K.S.A. 2016 Supp. 22-3716(c)(9) states that the district court may immediately revoke an offender's probation if it "finds and sets forth with particularity the reasons for finding that *the safety of members of the public* [*would*] *be jeopardized or that the welfare of the offender* [*would*] *not be served by such* [*intermediate sanction*]." (Emphasis added.) Even under the assumption that Granados' continued probation would have resulted in him using limited public resources, we believe Granados' use of those limited public resources had nothing to do with public safety or Granados' welfare. Simply put, the possibility that Granados would waste limited public resources should he remain on probation in 17CR2336 did not put either the public's safety or his own welfare at risk. Similarly, to us the possibility that Granados' continued probation in 17CR2336 prevented other people from accessing limited public resources has very little to do with the public's safety or Granados' welfare.

As a result, we hold that the district court's findings in support of its immediate revocation of Granados' 17CR2336 probation under K.S.A. 2016 Supp. 22-3716(c)(9) without the use of intermediate sanctions are inadequate. Consequently, the district court abused its discretion by bypassing K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(D)'s intermediate sanctions under subsection (c)(9)'s public safety and offender welfare exceptions.

Thus, to summarize, we reverse the revocation of Granados' probation and vacate the imposition of his underlying 32-month prison sentence in 17CR2336 because the district court did not make the necessary particularized findings to bypass the imposition of intermediate sanctions upon Granados for his single probation violation. Because Granados has not challenged the fact that he violated his probation by not reporting as directed to his September 5, 2019 meeting with his ISO, we remand to the district court for a new dispositional hearing only. See *State v. Clapp*, 308 Kan. 976, 991, 425 P.3d 605 (2018) (reversing and remanding for new dispositional hearing only when offender did

17

not prove that district court abused its discretion by finding that he violated his probation terms).

Probation revocation reversed, sentence vacated, and case remanded with directions.